*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: **08b0014n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:  RONALD CHRISTOPHER KING
and SHERIL LINN KING,

                 Debtors.

_____

MICHAEL L. BAKER, Trustee in Bankruptcy,
                 Plaintiff - Appellee,


          v.                                                                 No. 07-8045


MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
ENCORE CREDIT CORP., and
OPTION ONE MORTGAGE CORP.,
                 Defendants - Appellants.
_____

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky, at Covington.
Case No. 05-24988; Adv. Pro No. 06-2093

Argued:  May 13, 2008

Decided and Filed:  August 20, 2008

Before: FULTON, PARSONS, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:** Norman J. Frankowski II, FLAGEL & PAPAKIRK, Cincinnati, Ohio, for Appellants. Debra S. Pleatman, ZIEGLER & SCHNEIDER, Covington, Kentucky, for Appellee. **ON BRIEF:** Norman J. Frankowski II, FLAGEL & PAPAKIRK, Cincinnati, Ohio, for Appellants. Debra S. Pleatman, Michael Burris Baker, ZIEGLER & SCHNEIDER, Covington, Kentucky, for Appellee.

## OPINION

MARCIA PHILLIPS PARSONS, Chief Bankruptcy Appellate Panel Judge.  In this appeal we address an issue recently decided by the Sixth Circuit Court of Appeals in *Chase Manhattan Mortgage Corp v. Shapiro (In re Lee)*, 530 F.3d 458 (6th Cir. 2008): that a late-perfecting secured creditor in the context of a refinanced mortgage is not protected from preference liability by either the earmarking doctrine or the no-diminution-of-the-estate argument.  Finding no determinative factual distinction between *Lee* and the instant case, we AFFIRM the bankruptcy court's order granting judgment for the bankruptcy trustee in this preference action.  In reaching this conclusion, we reject the Appellants' argument that the preferential transfer was excepted from avoidance by the contemporaneous exchange defense of 11 U.S.C. § 547(c)(1).  Although this issue was not raised or addressed in *Lee*, our ruling is controlled by the Sixth Circuit's earlier decision in *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358, 360 (6th Cir. 1984).

## I.  ISSUES ON APPEAL

1.  In a refinancing where one secured creditor is substituted for another such that there is arguably no diminution of the estate, does the earmarking doctrine bar the avoidance of a mortgage perfected outside of the 10-day grace period in 11 U.S.C. § 547(e)?

2.  Notwithstanding the failure to perfect within 10 days, is avoidance excepted by the contemporaneous exchange defense of 11 U.S.C. § 547(c)(1)?

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel for the Sixth Circuit (the "Panel") has jurisdiction to decide this appeal.  The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and neither party elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).  A bankruptcy court's final order may be appealed as of right.  28 U.S.C. § 158(a)(1).  An order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109

S. Ct. 1494, 1497 (1989) (citations omitted).  The bankruptcy court's order granting the trustee's motion for summary judgment is a final order.

On summary judgment, determinations of whether payments are preferential transfers under 11 U.S.C. § 547(b) are conclusions of law reviewed de novo. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)* 323 F.3d 439, 442 (6th Cir. 2003).  "De novo means the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).  "No deference is given to the trial court's conclusions of law." *Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 964 (B.A.P. 6th Cir. 1998).

## III.  FACTS

In August 2004,  Ronald and Sheril King ("Debtors") purchased a home in Independence, Kentucky.  In order to finance the purchase, the Debtors borrowed from Homecomings Financial and Wilshire Credit Corporation, granting mortgages in favor of both which were duly recorded on September 30, 2004 ("Original Mortgages").

Less than a year later, the Debtors refinanced their Original Mortgages by obtaining a new loan from Encore Credit Corp. ("Encore") on July 22, 2005, in the amount of $138,600, a sum sufficient to pay off the Original Mortgages and the closing costs on the new loan.  That same day, the Debtors executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Encore ("New Mortgage").[1]  The funds to pay off the two Original Mortgages were advanced on July 28, 2005, but MERS did not record the New Mortgage until August 26, 2005.

Less than 90 days later on October 16, 2005,[2] the Debtors filed a voluntary petition for relief under chapter 7.  On November 9, 2006, the chapter 7 trustee, Michael Baker ("Trustee"), commenced this adversary proceeding, asserting that the New Mortgage was avoidable as a

---

[1] Encore assigned the servicing rights to Option One Mortgage Corp.

[2] Because the Debtors' bankruptcy case was filed before October 17, 2005, all references to the Bankruptcy Code, 11 U.S.C. § 101-1330, herein "§ ___," are to the pre-BAPCPA version. *See* Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. Law No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the BAPCPA amendments do not apply to cases pending before the effective date of BAPCPA).

preferential transfer under § 547 because it had been recorded more than 10 days after it was executed by the Debtors and less than 90 days before the filing of the bankruptcy petition. Both parties moved for summary judgment, agreeing that no facts were in dispute and that the only legal issues were application of the earmarking doctrine and the contemporaneous exchange defense. Rejecting these arguments, the bankruptcy court granted summary judgment for the Trustee, finding the New Mortgage to be avoidable. The Appellants timely filed this appeal.

## IV.    DISCUSSION

### A. 11 U.S.C. § 547(b)

Under § 547 of the Bankruptcy Code, a trustee may avoid certain transfers made to creditors within 90 days prior to the commencement of the bankruptcy case. The elements of a preferential transfer are set forth in § 547(b), which states:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> > (A) the case were a case under chapter 7 of this title;
> >
> > (B) the transfer had not been made; and
> >
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

"All five elements are prerequisites to the finding of a voidable preference." *In re Arnett*, 731 F.2d at 360.

### 1. The *Lee* Decision

As noted, this preference statute, as well as the earmarking doctrine, was recently considered by the Sixth Circuit Court of Appeals in *Lee*, a case with very similar facts to the instant case. In

*Lee*, the debtor purchased a residence in Michigan, with the purchase financed by a mortgage loan and secured by a recorded mortgage on the realty. Chase Mortgage Company ("Chase") eventually became the holder of the loan note and the mortgage. Approximately six months before the debtor's bankruptcy filing, the debtor refinanced his residential mortgage loan with Chase. On October 6, 2003, Chase disbursed the new loan proceeds to pay off the earlier loan held by it, but the new mortgage granted Chase was not recorded until December 17, 2003, 72 days later. The debtor filed for bankruptcy relief under chapter 7 on March 4, 2004, 77 days after the recording of Chase's new mortgage. The chapter 7 trustee sought to avoid the new mortgage granted Chase as a preferential transfer under § 547(b). The bankruptcy court granted summary judgment for the trustee, finding that the trustee had met his burden on all elements under § 547(b) and that the earmarking doctrine did not apply. *Chase Manhattan Mortgage Corp v. Shapiro (In re Lee)*, 326 B.R. 704, 708 (Bankr. E.D. Mich. 2005), *rev'd* 339 B.R. 165 (E.D. Mich. 2006). Although the district court reversed, the court of appeals reinstated the bankruptcy court's judgment in favor of the trustee. *In re Lee*, 530 F.3d 458.

As in the instant case, the preference defendant in *Lee*, Chase, did not dispute that the trustee had established the elements of an avoidable preference set forth in subsections (b)(1), (b)(3) and (b)(4) of § 547. *Id.* at 467. The court of appeals explained that under subsection (b)(2), the trustee must demonstrate that the transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made." *Id.* at 464 (quoting § 547(b)(2)).

> A debt is antecedent if it is incurred before the transfer in question. In the context of a loan, the borrower incurs the debt at the time the lender disburses the loan proceeds. Therefore, lenders who advance loan proceeds prior to the recording of the mortgage are undertaking a transfer of an interest in the subject property for purposes of § 547. Such transfers are subject to preferential transfer liability.

*Id.* at 464-65 (internal citations and quotations omitted).

The court of appeals noted that this potential problem for lenders is addressed by § 547(e) of the Code by providing a grace period for perfecting a security interest.

> As long as the mortgage is recorded within the 10-day time period, the associated mortgage debt will not be deemed antecedent. On the other hand if perfection occurs

more than ten days after the transfer takes effect, the transfer occurs at the time of the perfection, and the debt thus will be an antecedent one."[3]

*Id.* at 465 (internal citations and footnote omitted).[4]  Under Michigan law, perfection occurs upon recording.[5]  Because Chase's new mortgage was recorded 72 days after the loan proceeds were disbursed, well outside the 10-day grace period, the transfer was made on account of an antecedent debt. *Id.* at 466.

The *Lee* court explained that Chase's arguments regarding earmarking and lack of diminution of the estate come into play with respect to the two remaining elements of a preference.  The first is the requirement imposed by the prefatory language of § 547(b) that the transfer be property of the debtor.  Under the judicially-crafted earmarking doctrine, where a debtor uses borrowed funds "specifically earmarked by the lender for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds pass through the debtor's hands in getting to the selected creditor." *Id.*  The second is the § 547(b)(5)'s improvement-in-position provision, which is generally understood to require that the transfer impair or diminish the estate. *Id.* at 464.

In order for the earmarking doctrine to apply, three conditions must be met: (a) an agreement between a new creditor and the debtor for the payment of a specific antecedent debt; (b) performance of the agreement according to its terms; and (c) the transaction does not result in a diminution of the debtor's estate. *Id.* at 466 (citing *McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd.)*, 859 F. 2d 561, 566 (8th Cir. 1988)).  The *Lee* court concluded that none of these conditions were satisfied in the facts before it.  The court of appeals observed that the transfer that the trustee was seeking to avoid was the grant of the new mortgage rather than the payment of the new loan proceeds

---

[3] In pertinent part, § 547(e)(2) provides:
For the purposes of this section, . . . , a transfer is made—
(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, . . . ; [or]
(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days.

[4] The court observed that BAPCPA increased the grace period from 10 days to 30 days, but noted that in the case before it, Chase's new mortgage was recorded well outside even the new 30-day grace period, such that the result would be the same under either version of the law. *In re Lee*, 530 F.3d at 465 n.2.

[5] Under § 547(e)(1)(A), "a transfer of real property . . . is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee[.]" "Applicable law" in *Lee* was Michigan law since the debtor's residence was located there. *In re Lee*, 530 F.3d at 466.

to discharge the original loan and thus did not involve a transfer of "earmarked" funds. The court refused to conflate the two transfers and treat them as one for purposes of applying the earmarking defense, observing that to do so would ignore what actually occurred in the transaction and disregard the Bankruptcy Code's plain meaning. *Id.* at 471. As to the third component of the earmarking doctrine that necessitates a showing that the transaction did not result in a diminution of the estate, the court of appeals again refused to look at the transaction as a whole, rejecting Chase's argument that because the loan in question was simply a refinancing the debtor's estate had not been impaired or diminished. The court noted that from the point the old loan was paid off until such time as the new mortgage was recorded, Chase did not hold a perfected lien interest, even though Chase's old mortgage was still of record and was not discharged until January 16, 2004, a date after the new mortgage was recorded on December 17, 2003, *such that there was never a time that Chase did not have a recorded mortgage. Id.* at 472. As explained by the court of appeals:

> The fact that the discharge was not recorded until after the recording of the new Mortgage is of no moment. There was no debt to be secured under the Original Mortgage once the Original Loan was paid. Even if the Discharge was not timely recorded by the Register of Deeds (and it was not), there was no debt and a bona-fide purchaser could have relied on the fact that the Original Mortgage had been released when the Original Loan was paid.

*Id.* at 467. Due to Chase's lack of a perfected lien interest, "Chase's subsequent perfection of the New Mortgage diminished Lee's estate because the non-exempt equity in the Property that otherwise would have been available for distribution to Lee's unsecured creditors became encumbered, and unavailable to unsecured creditors, by the New Mortgage that Chase received." *Id.* at 472.[6] For this same reason, the court also concluded that the § 547(b)(5) element of a preference had been established. *Id.*

The court of appeals rejected Chase's policy argument that imposing preference liability would be unfair because the refinancing transaction involved a mere substitution of its new mortgage for its original mortgage and ultimately benefitted the debtor's other creditors rather than Chase by lowering the debtor's monthly mortgage payments. *Id.* at 473. Observing that a bankruptcy court's equitable powers must be exercised within the confines of the Bankruptcy Code, the court noted that

---

[6] The record in the instant case does not establish when the Original Mortgages were released, although Appellants state in their brief that "[t]here is no evidence in the record that the Property was ever unencumbered." (Appellants' Br. at 4.) *Lee* informs us that this fact is irrelevant to our holding.

"[t]o insulate Chase from preference liability would essentially write § 547(e) out of the Bankruptcy Code and, in the process, defeat the sound policy the statute was intended to promote—the discouragement of secret liens." *Id.* at 472. The court explained that Chase's suggested equitable approach to determining the appropriate timing for perfection would not only lead to unpredictability, but would also substitute a court's judgment for that of Congress, who "by enacting § 547(e)(2), has already determined the appropriate length of time between a creditor's transfer of value and perfection." *Id.* at 473. Lastly, the court suggested that the equities did not lie in Chase's favor since as a sophisticated lender it could have prevented the problem by timely perfecting its security interest within the Bankruptcy Code's long-established 10-day grace period. "We simply are not at liberty to rewrite the Code's preference provision under the rubric of doing equity to protect late-perfecting secured creditors." *Id.* at 474.

### 2. The Case *Sub Judice*

Applying *Lee* to the instant case results in the inescapable conclusion that the New Mortgage granted to MERS by the Debtors is avoidable as a preferential transfer under § 547(b). The only factual distinction between *Lee* and this case is that *Lee* involved a refinancing by the same creditor, while in this case the refinancing by a new creditor. This difference is irrelevant and has no bearing on the outcome of the Trustee's preference action. With regard to the specific elements of an avoidable preference, the Appellants herein, as in *Lee*, did not dispute that the Trustee had established subsections (b)(1), (b)(3) and (b)(4) of § 547. As to subsection (b)(2) that the transfer be on account of an antecedent debt, it must be noted that, under the law of the state of Kentucky where the Debtors' residence is located, perfection of a mortgage occurs upon recording. *See* Ky. Rev. Stat. Ann.§ 382.270. Because the New Mortgage granted to MERS was recorded on August 26, 2005, more than 10 days after the new loan proceeds were disbursed on July 28, 2005, the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made." § 547(b)(2). For the reasons set forth in *Lee*, the transfer was an interest of property of the Debtors, the earmarking doctrine is inapplicable, and § 547(b)(5)'s diminution of the estate element is established. Accordingly, the Debtors' transfer of the New Mortgage to MERS satisfies all five required elements of § 547(b), and is avoidable as a preference unless the contemporaneous exchange exception of § 547(c)(1) applies.

## B. 11 U.S.C. § 547(c)(1)

Under § 547(c)(1) of the Bankruptcy Code:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

> (B) in fact a substantially contemporaneous exchange[.]

In *Arnett*, the Sixth Circuit Court of Appeals addressed this statute in the context of facts similar to the instant case, although the case involved the refinancing of an automobile rather than real property. *In re Arnett*, 731 F.2d at 359. As in the present case, the refinancing creditor failed to timely perfect its security interest within § 547(e)(2)'s 10-day grace period; perfection did not take place until 33 days after the creation of the security interest. Despite the untimely perfection, the bankruptcy court ruled in the trustee's preference action that the new creditor's perfection was "substantially contemporaneous" with the loan transaction and, therefore, the transaction fell with the exception to the trustee's avoidance powers found in § 547(c)(1). *Ray v. Sec. Mut. Fin. Corp. (In re Arnett)*, 13 B.R. 267 (Bankr. E.D. Tenn. 1981), *aff'd* 17 B.R. 912 (E.D. Tenn. 1982). Although the district court affirmed, the court of appeals reversed.

The Sixth Circuit explained that § 547(c)(1) has two crucial elements: "(1) The parties must intend the exchange to be substantially contemporaneous and (2) the exchange must in fact be substantially contemporaneous." *In re Arnett*, 731 F.2d at 362. As to the second element, the court held that in order to be substantially contemporaneous *in fact*, perfection must take place within the time period set forth in § 547(e)(2), i.e., 10 days under pre-BAPCPA.

> Section 547(e)(2)(B) explicitly provides that a security interest perfected more than 10 days after its creation does not relate back and is deemed to have occurred on the date of perfection. The applicability of section 547(c)(1) to delayed perfection of security interests is thus limited to 10 days.

*Id.* at 364. As explained by the court of appeals:

> The particular problems posed by the delay between creation and perfection of security interest were well recognized by Congress. One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of "secret liens" by invalidating all transfers occurring within 90 days prior to the filing of the petitions. Thus, creditors are discouraged from waiting until the debtor's financial troubles

become all-too-manifest before recording security interests. Section 547(e)(2)(A) and (B) reflect this concern by providing that a transfer of a security interest relates back to the date of the underlying transaction if perfection occurs no more than 10 days afterwards; if perfection occurs more than 10 days later, the transfer is deemed to occur at the date of perfection.

The lower courts' broad reading of section 547(c)(1) effectively negates section 547(e)(2). . . . [T]he evidentiary problems inherent in an expansive reading of section 547(c)(1) embody a Pandora's box of evils, even if no risk of fraud or misrepresentation was present in this case.

. . . .

If the sole test is the intention of the parties as required in 11 U.S.C. § 547(c)(1)(A), then it would be necessary for the Court to conduct extensive factual inquiries into situations which would lend themselves to collusion and the fabrication of evidence, and perhaps render the preference section inoperable against all but the most flagrant violations. The purpose of adding the requirement of 11 U.S.C. § 547(c)(1)(B) is to avoid the inherent evidentiary difficulties of 11 U.S.C. § 547(c)(1)(A) by requiring that the parties' conduct bears out their intentions. [citation omitted].

In light of the explicit grace periods provided for perfection of security interest in sections 547(e)(2) and 547(c)(3), Congress has clearly struck the balance in favor of repose in this area of the law. Case-by-case development of the contemporaneous exchange exception would quickly result in uncertainty and protracted litigation, delaying, not expediting, the satisfaction of creditors' claims and the debtor's return to financial health. The policies of discouraging creditors "from racing to the Courthouse to dismember the debtor during his slide into bankruptcy" and facilitating equality of distribution would be severely eroded under the lower courts' construction of the statute . . . .

*Id.* at 363-64.

Based on the unequivocal holding of the Sixth Circuit in *Arnett*, the assertion that the preferential transfer to MERS is protected from avoidance by the contemporaneous exchange exception of § 547(c)(1) must be rejected.

## V.  CONCLUSION

The order of the bankruptcy court granting summary judgment in favor of the Trustee is AFFIRMED in all respects. The Trustee established all of the elements of a preferential transfer under § 547(b) of the Bankruptcy Code, and the transfer does not fall within the contemporaneous exchange exception to avoidance under § 547(c)(1). Neither the earmarking doctrine nor the assertion of no diminution of the estate protects a creditor that fails to timely perfect within the grace period provided by § 547(e)(2), even though the transaction arises in the context of a refinancing.